**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
═══════════════════════════════ )
                                )
JANOD, INC.,                    )
                                )
           Plaintiff,           ) Civil Action No. 11-1963 (EGS)
      v.                        )
                                )
ECHO ENTERTAINMENT, INC.,       )
                                )
           Defendant.           )
─────────────────────────────── )
```

**<u>MEMORANDUM OPINION</u>**

Plaintiff Janod, Inc. ("Janod") brings this action against Defendant Echo Entertainment, Inc. ("Echo"), alleging breach of contract, intentional and/or negligent interference with prospective economic advantage, and fraud. Pending before the Court is Defendant's Motion to Dismiss pursuant to Rules 12(b)(2), (3), and (6) for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). Upon consideration of the Motion to Dismiss, the Opposition and Reply thereto, the relevant law, and the entire record in this case, and for the reasons set forth below, the Court concludes that it lacks personal jurisdiction over Defendant. Accordingly, the Court will **GRANT** Defendant's Motion to Dismiss.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Janod is a construction company incorporated in Vermont, with its principal place of business in New York.  Am. Compl. ¶¶ 1, 7.  Janod specializes in rock stabilization and remediation, a potentially hazardous field, which requires Janod's rock remediation technicians to perform work on unstable rock or mountainside surfaces while suspended at great heights above the ground.  *Id.* ¶¶ 7, 9.  Defendant is a production company organized under the laws of California, with its principal place of business in California.  *Id.* ¶ 2.  In April 2010, Defendant approached Janod about filming and producing a reality television series documenting Janod's work.  *Id.* ¶ 10. The reality television show, bearing the working title "Rock Stars," was intended to be filmed and/or produced by Defendant for the benefit of the National Geographic Channel ("Nat Geo").[1] *Id.* ¶ 11.  Janod agreed to film the series, and on February 15, 2011, Echo and Janod entered into a "Participant Attachment and Production Agreement" ("Participant Agreement").  *Id.* ¶ 15.  The Participant Agreement granted Echo's film crew access to Janod's jobsites to film the television series, and it contained a clause which provided Janod the right to exercise editorial

---

[1] Nat Geo was previously a named defendant in this action but, as discussed *infra*, was voluntarily dismissed after reaching a settlement with Plaintiff.

control over any content in the series that would portray Janod
in a negative light. *Id.* ¶¶ 15-16.  Janod alleges that the
purpose of this clause was to help Janod protect its accumulated
goodwill and reputation in the industry. *Id.* ¶ 16.  The clause
states:

> Notwithstanding anything to the contrary contained
> herein Company [Janod] shall have final approval of
> the content of the Material and Project solely and
> only in order to ensure that there is nothing in
> content which will reasonably be portrayed to the
> public which may portray the Company [Janod] in a
> negative light or defamatory manner.  In all other
> regards, financial, creative or otherwise, Producer
> [Echo] shall have ultimate decision-making authority,
> subject to the terms of any applicable Network
> production or distribution agreement.

Am. Compl. Ex. A, at ¶ 2(j).  The Participant Agreement also
contained a clause labeled "Venue and Choice of Law," which
provides:

> The parties agree that any claim or controversy
> arising out of this Agreement shall be brought
> exclusively in the Federal Courts of the United
> States.  This Agreement and all related matters shall
> be governed by the laws of the State of California
> applicable to contracts entered into and performed
> fully therein.

Am. Compl. Ex. A, at ¶ 19(d).

On September 24, 2010, Echo entered into a separate
Commission Agreement with Nat Geo.  *See* Def.'s Mot. to Dismiss,
Ex. C.  Under the Commission Agreement, Nat Geo obtained all
rights to exploit the "Rock Stars" footage produced by Echo,
including creative rights, alteration rights, and rights to

3

redistribute the program.  *Id.*  In addition, the Commission

Agreement contained a "Governing Law" clause, which provides:

> This Agreement shall be construed and enforced in
> accordance with the laws of the State of California.
> Producer [Echo] and [Nat Geo] hereby consent to and
> submit to the jurisdiction of the federal and state
> courts located in Los Angeles, California, and any
> action or suit under this Agreement shall be brought
> in any federal or state court with appropriate
> jurisdiction over the subject matter established or
> sitting in the State of California.  Neither [Echo]
> nor [Nat Geo] shall raise in connection therewith, and
> hereby waives, any defenses based upon venue, the
> inconvenience of the forum, the lack of personal
> jurisdiction, the sufficiency of service of process .
> . . or the like in any such action or suit brought in
> the State of California.

Def.'s Mot. to Dismiss Ex. C, at ¶ 19.4 (emphasis added).

Echo began filming the television series, and beginning in

July 2011, Janod attempted to contact Echo to review the

proposed episodes of "Rock Stars" and determine whether any of

the material portrayed Janod in a negative light.  Am. Compl.

¶ 18.  Janod alleges that Echo failed to respond to its

inquiries, thus leaving Janod unable to exercise its editorial

control.  *Id.* ¶ 19.  In July and August 2011, Janod's counsel

communicated to Echo that Echo's failure to allow Janod to

review the material placed Echo in breach of the Participant

Agreement.  Janod's counsel also demanded that Janod be

permitted to exercise its editorial rights.  *Id.* ¶ 20.  After

receiving no response to its demands, Janod limited Echo's

access to its jobsites until Echo agreed to honor its

contractual obligations to Janod.  *Id.* ¶ 21.  On August 29, 2011, Janod alleges that it entered into an additional agreement with Echo, via email, whereby Echo again contractually agreed that Janod would have the right to exercise editorial control over content that might portray Janod in a negative light.  *Id.* ¶ 22.  Echo also agreed to schedule a meeting with Janod and to provide Janod at least ten business days after the meeting and prior to the airing of the series to submit proposed revisions to the episodes.  *Id.*  The parties scheduled a meeting to occur on October 28, 2011 in Montreal, Quebec.  *Id.* ¶ 23.  In advance of the meeting, Janod submitted to Echo multiple proposed revisions to the first season of "Rock Stars."  *Id.* ¶ 25. However, on October 25, 2011, Echo unilaterally cancelled the meeting and informed Janod that Echo was unwilling to make, or even discuss, any of Janod's proposed revisions.  *Id.* ¶ 29. Janod alleges that Echo has delivered, and continues to deliver, final episodes of the "Rock Stars" series to Nat Geo in Washington, D.C. for airing, without first allowing Janod to exercise its contractually-guaranteed rights of final approval as to any content which may reasonably portray Janod in a negative light.  *Id.* ¶¶ 32-33.

### B.   Procedural Background

On November 7, 2011, Janod filed a Complaint and a Motion for a Temporary Restraining Order and/or Preliminary Injunction

to prevent Nat Geo and Echo from airing "Rock Stars" until Janod was allowed to exercise its right to final approval of certain content of the series.  *See* Pl.'s Mot. for TRO and/or Prelim. Inj., Docket No. 2.  After briefing on the motion was complete, on November 16, 2011, Janod withdrew its motion, stating that it had reached a settlement with Nat Geo.  *See* Notice of Withdrawal of Mot., Docket No. 26.  Thereafter, Janod voluntarily dismissed Nat Geo from this litigation.  *See* Notice of Voluntary Dismissal, Docket No. 27.  On November 29, 2011, Echo filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) for lack of jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. On December 19, 2011 Janod filed its First Amended Complaint. On January 3, 2012, Echo filed a Motion to Dismiss Janod's Amended Complaint on the same grounds asserted in its initial motion.  That motion is now ripe for determination by the Court.

## II.  STANDARD OF REVIEW

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's personal jurisdiction over the defendant.  *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008); *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  "[T]he general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."

*First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  This *prima facie* showing must be premised on specific facts, however, and cannot be based on mere conclusory allegations.  *See GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000); *First Chi. Int'l*, 836 F.2d at 1378-79.  Further, when determining whether personal jurisdiction exists over a defendant, the Court need not treat all of a plaintiff's allegations as true.  Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."  *Dean v. Walker*, 756 F. Supp. 2d 100, 102 (D.D.C. 2010) (internal quotation marks and citation omitted).

## III. ANALYSIS

### A.   Personal Jurisdiction

Echo argues that this Court lacks personal jurisdiction over it, and that Plaintiff's attempt to bootstrap jurisdiction over Echo based upon Nat Geo's presence in the District is improper.  This case arises under the Court's diversity jurisdiction.  *See* Am. Compl. ¶ 3 (asserting jurisdiction under 28 U.S.C. § 1332).  Accordingly, whether the Court has personal jurisdiction over Echo is a function of District of Columbia law.  *See Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  Because Plaintiff does not allege that Echo is a resident of the District of Columbia, *see* Am. Compl. ¶ 2, the Court may exercise

personal jurisdiction over Echo only if Plaintiff has pled
sufficient facts to satisfy (1) the District of Columbia long-
arm statute, D.C. Code § 13-423, and (2) the constitutional
requirements of due process.  *See GTE New Media Servs.*, 199 F.3d
at 1347.[2]

The sole basis alleged by Plaintiff for this Court to
exercise personal jurisdiction over Echo is that Echo is
"transacting [] business in the District of Columbia," pursuant
to § 13-423(a)(1).  Pl.'s Opp'n at 6 ("The D.C. long-arm statue
expressly provides that this Court may exercise personal
jurisdiction over Echo for any claims arising against Echo as a
result of it 'transacting any business in the District of
Columbia.'" (quoting D.C. Code § 13-423(a)(1))).  To establish
personal jurisdiction under D.C. Code § 13-423(a)(1), the
plaintiff bears the burden of demonstrating that (1) the
defendant transacted business in the District; (2) the claim
arose from the business transacted in the District; and (3) the
defendant had minimum contacts with the District such that the
Court's exercise of personal jurisdiction would not offend

---

[2] Alternatively, pursuant to D.C. Code § 13-334(a), the
Court may "exercise 'general jurisdiction' over a foreign
corporation as to claims not arising from the corporation's
conduct in the District, if the corporation is 'doing business'
in the District."  *Gorman v. Ameritrade Holding Corp.*, 293 F.3d
506, 509 (D.C. Cir. 2002) (quoting D.C. Code § 13-334(a)).
Here, Janod alleges only that this Court has specific personal
jurisdiction over Echo pursuant to D.C. Code § 13-423.  *See*
Pl.'s Opp'n at 6.

traditional notions of fair play and substantial justice.  *See*
*Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46,
48 (D.D.C. 1994).  This subsection of the long-arm statute has
been interpreted to be coextensive with the Due Process Clause
of the Constitution.  *See Helmer v. Doletskaya*, 393 F.3d 201,
205 (D.C. Cir. 2004).  Consequently, under subsection (a)(1)
"the statutory and constitutional jurisdictional questions,
which are usually distinct, merge into a single inquiry . . . ."
*United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  In
this single inquiry, courts must examine whether the defendant
"has purposefully availed itself of the benefits and protections
of the District in engaging in a business activity in the forum
jurisdiction," and whether "it is fair and reasonable to expect
it to anticipate being sued in that jurisdiction." *Shoppers*
*Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (en
banc).  Put simply, whether Defendant's conduct constituted
"transacting business" in the District within the meaning of
Section 13-423(a)(1) depends on whether, through its conduct
related to the District, Defendant established "minimum
contacts" with the District such that the Court's exercise of
personal jurisdiction would not offend "traditional notions of
fair play and substantial justice." *See Int'l Shoe Co. v.*
*Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks
and citation omitted).

Plaintiff, relying solely on the allegations in its Amended Complaint and Opposition brief, asserts that Echo has "clearly transacted business in the District" based on the Commission Agreement Echo entered into with Nat Geo, a District of Columbia corporation.  Pl.'s Opp'n at 7.  Defendant argues, by contrast, that the Amended Complaint fails to allege facts sufficient to establish that it is "transacting business" in the District. Def.'s Mot. to Dismiss at 11-12.  According to Defendant, Echo has no offices or employees in the District, is not registered to do business in the District or elsewhere outside the State of California, and does not hold any assets or other property in the District, except for sums due from Nat Geo under the Commission Agreement.  *See id.* at 9.  Defendant further argues that the sole basis alleged by Plaintiff -- performance of the Commission Agreement -- is inconsistent with the expectations and intentions of the parties expressly set forth in that Agreement that any dispute would be resolved by a federal or state court in California.  *Id.* at 11-12.

### 1. Whether Plaintiff's Claims Arose From Defendant's Business Transacted in the District

Even assuming, *arguendo*, that Echo's performance of the Commission Agreement suffices for it to have transacted business in the District of Columbia, the Court cannot find that Plaintiff's claims for breach of contract, intentional and/or

negligent interference with prospective economic advantage, and fraud "arose from" that Agreement.

Because a court in the District of Columbia may exercise specific jurisdiction over a non-resident defendant "only [for] a claim for relief arising from acts enumerated in [the statute] . . . ," D.C. Code § 13-423(b), Plaintiff's jurisdictional allegations must arise from the same conduct of which it complains, *see FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007). Therefore, for this Court to have specific jurisdiction over Echo under § 13-423(a)(1), "the actions giving rise to the claim[s] must have occurred in the District." *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 228 (D.D.C. 2005).

The sole basis for this Court's exercise of jurisdiction, according to Janod, is the Commission Agreement between Echo and Nat Geo. However, Janod's breach of contract claim arises out of a separate contract between Echo and Janod, the Participant Agreement. That contract, concluded between two non-residents of the District, anticipating no performance in the District, and having no substantial connection to the District, cannot be the basis for jurisdiction over Echo. Janod's other two claims -- intentional and/or negligent interference with prospective economic advantage and fraud -- stem from Echo's alleged denial of Janod's right to exercise editorial control over the reality

series, as provided for in the Participant Agreement.  There are

no allegations whatsoever that those actions arose out of Echo's

transacting any business in the District either.

In its Opposition, Plaintiff has attempted to recast the

actions out of which its claims arise:

> [A]t the heart of each and every claim asserted
> against Echo by Janod is the fact that Echo damaged
> Janod by delivering final episodes of the "Rock Stars"
> series to NatGeo (for a public broadcast) without
> first allowing Janod to exercise its contractually-
> guaranteed right to final editorial approval.
> Accordingly, Janod did not become damaged (and accrue
> its claims against Echo) until Echo actually delivered
> the final episodes of the series to NatGeo.  That very
> delivery of the "Rock Stars" series by Echo to NatGeo
> is the business that Echo has transacted in the
> District of Columbia for the purposes of this
> jurisdictional analysis.

Pl.'s Opp'n at 8.  The Court is not persuaded by this

characterization.  Plaintiff's harm flows from Echo's denial of

its contractual editorial rights under the Participant

Agreement, which is the basis of each of Plaintiff's three

claims.  That denial occurred independent of Echo's actual

delivery of the final episodes to Nat Geo pursuant to a separate

agreement.

In *Brunson v. Kalil & Company*, the plaintiff similarly

brought a suit based on a contract without a substantial

connection to the District of Columbia.  *See* 404 F. Supp. 2d at

228.  In the plaintiff's opposition, she attempted to

recharacterize her allegations as arising out of a separate,

12

related contractual arrangement.  In granting the defendant's

motion to dismiss for lack of jurisdiction, another Judge on

this Court stated:

> In Plaintiff's Amended Complaint, she asserts that she
> is seeking declaratory judgment based on the rights
> and obligations of the parties under the Brokerage
> Agreement.  However, in her Opposition she states that
> the closing of the sale in Washington, D.C. is the
> "central event in the case."  The closing, however,
> occurred pursuant to the Purchase Agreement, not the
> Brokerage Agreement.  By characterizing the closing to
> be the central event in this case which gave rise to
> this claim, Plaintiff is requesting this Court to
> analyze the Purchase Agreement, not the Brokerage
> Agreement.  Plaintiff cannot have it both ways.  This
> Court refuses to find that actions related to the
> Purchase Agreement gave rise to this claim, which
> Plaintiff ostensibly brought pursuant to the Brokerage
> Agreement.

*Id.* at 229 (internal citations omitted).  Likewise, here, Janod

seeks damages based on the rights and obligations of the parties

under the Participant Agreement, not the Commission Agreement.

The Court therefore refuses to find that the delivery of the

final episodes to Nat Geo in Washington, D.C. is the action out

of which Janod's claims arise.  There are no allegations that

any actions related to the Participant Agreement or the breach

thereof occurred in the District of Columbia.  Therefore,

Plaintiff has failed to meet its burden of showing that the

actions giving rise to its claims occurred in the District.

## 2.   Minimum Contacts

Moreover, Plaintiff has failed to meet its burden of demonstrating that Echo purposefully established minimum contacts with the District such that it is reasonable for it to anticipate being subject to suit in a District of Columbia court.  As Plaintiff acknowledges, Echo's performance of the Commission Agreement with Nat Geo is Echo's only alleged contact with the District.

"[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal quotation marks and citations omitted).  However, an out-of-state resident must do more than simply enter into a contract with a resident of the District to have minimum contacts with the District; the contract must have a "'substantial connection' with the forum." *Helmer*, 393 F.3d at 205 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  "[A] contract is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction,'" therefore, "a court must evaluate the 'prior negotiations and contemplated future consequences, along with the terms of the contract and

14

the parties' actual course of dealing' to determine whether the defendant 'purposefully established minimum contacts within the forum.'"  *Helmer*, 393 F.3d at 205 (quoting *Burger King*, 471 U.S. at 479).

Here, the Court cannot conclude that Defendant purposefully established minimum contacts with this forum based upon the Commission Agreement.  There is no evidence in the record regarding the location where the Commission Agreement was negotiated.  Other than the participation of Nat Geo, a District resident, the only connection between the Commission Agreement and the District of Columbia is, as Plaintiff argues, that Echo was to "deliver" episodes of "Rock Stars" to Nat Geo, presumably to its headquarters in the District of Columbia.  *See* Pl.'s Opp'n at 7-8.  Janod also emphasizes that Echo *will* receive over one million dollars based upon this contact with the District of Columbia.  *See id.* at 7.  However, Janod has provided the Court with no authority to support its argument that these assertions alone are sufficient to demonstrate a substantial connection with the District of Columbia.  In *Burger King*, for example, the relationship between the defendant, a franchisee, and Burger King was based on a written contract which contemplated a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," and defendant voluntarily accepted "the long-term and

exacting regulation of his business from Burger King's Miami headquarters." *Burger King*, 471 U.S. at 480.  As a result, the Supreme Court concluded that defendant had purposefully availed himself of the privilege of conducting business in Florida.  *Id.* The contact between Echo and the District of Columbia -- while in theory occurring more than once according to Plaintiff's arguments -- is a far cry from that between Mr. Rudzewicz and Florida.  Indeed, there is no information in the record about the number of times Echo has delivered, or plans to deliver, episodes of the "Rock Stars" series to Nat Geo.

Most importantly, the Commission Agreement includes a "Governing Law" clause that expressly provides that "any action or suit under th[e] Agreement shall be brought in any federal or state court . . . sitting in the State of California."  Def.'s Mot. to Dismiss Ex. C, at ¶ 19.4.[3]  "While agreements to submit to a particular jurisdiction for resolution of disputes may not conclusively establish personal jurisdiction, it is nevertheless one factor relevant in an evaluation of the contract in question."  *S.E.C. v. Lines Overseas Mgmt., Ltd.*, No. 04-302, 2005 WL 3627141, *6 (D.D.C. Jan. 7, 2005) (internal citations

---

[3] As Janod rightly argues, the Commission Agreement does not bind Janod, *see* Pl.'s Opp'n at 9-10; however, because Janod relies upon the Commission Agreement as the basis of Echo's purported transaction of business in the District, the Court still examines the terms of that agreement for purposes of the minimum contacts analysis.

omitted).   In *Fasolyak v. Cradle Society, Inc.*, another Judge in
this District found that a choice-of-law provision designating
another forum "reinforce[d] the Court's conclusion that the non-
resident defendant did not purposely avail itself of the
privilege of conducting activities in the District of Columbia
such that it could anticipate being haled into court here."  No.
06-01126 (TFH), 2007 WL 2071644, *7 (D.D.C. July 19, 2007); *see
also Burger King*, 471 U.S. at 481-82.  Here, the explicit
Governing Law clause in the Commission Agreement goes further,
not only specifying that California law shall apply, but also
designating a California forum for the resolution of any
disputes arising under the agreement.  This clause therefore
reinforces the Court's conclusion that Echo could not have
reasonably anticipated being subject to suit in a District of
Columbia court.

     Further, by entering into the Commission Agreement with
District-based Nat Geo, Echo could not have reasonably
anticipated being haled into a District of Columbia court to
defend itself with regard to an alleged breach of an entirely
separate contract, the Participant Agreement.  Notably,
Plaintiff has not pointed to a single legal authority to support
its argument that the facts alleged here support exercising
personal jurisdiction over Echo.  On this basis, the Court finds
that Plaintiff has not met its burden of demonstrating that Echo

17

has minimum contacts with the District.   The Court therefore
finds that it would offend traditional notions of fair play and
substantial justice for Echo, a non-resident defendant, to be
haled into a District of Columbia court with respect to a matter
brought by a non-resident plaintiff relating to purported
injuries that occurred outside of the District.[4]

---

[4] Although plaintiff does not allege it as a basis for the
Court's jurisdiction, the Court would similarly find that it
cannot exercise general personal jurisdiction over Echo under
D.C. Code § 13-334(a).   The District of Columbia Court of
Appeals "has indicated that the reach of 'doing business'
jurisdiction under § 13-334(a) is co-extensive with the reach of
constitutional due process." *Gorman*, 293 F.3d at 510 (citing
*Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C. 1985)).
"Under the Due Process Clause, such general jurisdiction over a
foreign corporation is only permissible if the defendant's
business contacts with the forum district are 'continuous and
systematic.'" *Gorman*, 293 F.3d at 509-10 (quoting *Helicopteros
Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).
Here, Plaintiff has not alleged or even suggested that Echo's
business contacts with the District are continuous and
systematic.   Moreover, in order for a court to invoke
jurisdiction under Section 13-334(a), the statute's service
requirements must have been met; i.e., the defendant must have
been "personally served [with process] in the District of
Columbia." *Gonzalez v. Internacional de Elevadores, S.A.*, 891
A.2d 227, 233 (D.C. 2006).   In this case, Plaintiff served Echo
at its office in Studio City, California, as well as by mail to
that address. *See* Return of Service/Affidavit, Docket No. 28.
Because Echo was not served in the District of Columbia, it
cannot be subject to jurisdiction under Section 13-334(a). *See
McDaniel v. FEDITC LLC*, 825 F. Supp. 2d 157, 161 (D.D.C. 2011)
(finding service of process by mail to principal place of
business in Maryland insufficient to confer jurisdiction under
Section 13-334(a)); *Gowens v. DynCorp*, 132 F. Supp. 2d 38, 42
(D.D.C. 2001) (finding service of process at company
headquarters in Virginia insufficient to confer general personal
jurisdiction).

Because the Court concludes that it lacks personal jurisdiction over Echo, the Court need not reach the merits of Defendant's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6).

**B.   Transfer of Venue**

As an alternative to dismissal, Defendant requests -- without argument or analysis -- that the Court transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C § 1406(a).

Even though the Court has concluded that it lacks personal jurisdiction over Echo, it may nonetheless transfer venue if it is in the interests of justice to do so. *See, e.g.*, *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) ("[W]e may transfer the case even though it is likely that we do not have personal jurisdiction over appellees." (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962))); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984); *Cellutech*, 871 F. Supp. at 50-51.   Section 1404(a) governs the transfer of so-called "convenience" cases--that is, cases in which venue is proper in the original court but the court decides that transfer is warranted for the "convenience of the parties and witnesses."   Section 1406(a), on the other hand, controls in cases where venue is improper in the original court

but, rather than dismissing the action, the court decides to transfer to a district in which venue is proper.  The decision to transfer an action on this basis is left to the discretion of the Court.  *See Novak-Canzeri v. Saud*, 864 F. Supp. 203, 207 (D.D.C. 1994).  Under either section, the Court's transfer must be in the interests of justice.  Here, the Court need not reach the issue of whether venue is proper in this District, because the Court concludes that transferring this case is not in the interests of justice under either Section 1404(a) or Section 1406(a).

In its Opposition, Plaintiff asserts that, in addition to the Central District of California, this action alternatively could have been brought in the United States District Courts for the Northern District of New York, the Eastern District of Washington, or the Western District of North Carolina because a substantial portion of the filming of the "Rock Stars" series occurred in those districts.  Pl.'s Opp'n at 13.  Plaintiff specifically requests that, if the Court is inclined to transfer this matter to an alternative forum, the Court transfer this case to the District Court for the Western District of North Carolina.  *Id.* at 16 n.7.  Ordinarily, there is a strong presumption in favor of a plaintiff's choice of forum.  *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981).  However, prior to transfer, the Court must ensure that Defendant is

subject to personal jurisdiction in the transferee forum.   *See*

*Crenshaw v. Antokol,* 287 F. Supp. 2d 37, 42 (D.D.C. 2003)

(citing *Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d

1228, 1230 (D.C. Cir. 1981) (per curiam)).   Without more factual

information, the Court cannot ensure that the District Court for

the Western District of North Carolina would have personal

jurisdiction over Echo.   Because Plaintiff has requested a

different forum from the California forum requested by

Defendant, and because Plaintiff raises a number of forums in

which it believes this action would be proper, the Court finds

that transfer would not be in the interests of justice.

Accordingly, the Court will decline to transfer this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it

lacks personal jurisdiction over Defendant.   The Court further

concludes that it would be inappropriate to grant Defendant's

request to transfer this case to the Central District of

California.   Accordingly, the Court will **GRANT** Defendant's

Motion to Dismiss for lack of jurisdiction and will **DISMISS** the

Amended Complaint.   A separate Order accompanies this Memorandum

Opinion.

**SIGNED:**      **Emmet G. Sullivan**
             **United States District Court Judge**
             **September 10, 2012**